UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORLISS ANN COOPER, et al.,　　　　　　　　Case No. 1:11-cv-635
　　　　　Plaintiffs　　　　　　　　　　　　　　　　Litkovitz, M.J.

vs

WESTERN & SOUTHERN　　　　　　　　　　　ORDER
FINANCIAL GROUP, INC.,
　　　　　Defendant

Plaintiffs bring this action under Title VIII of the Civil Rights Act of 1968, the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.*, and Ohio statutory and common law against defendant Western & Southern Financial Group, Inc. (Western & Southern). (Doc. 3). This matter is before the Court on defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 4) and plaintiffs' response in opposition to defendant's motion. (Doc. 5).

**I. Factual allegations of the amended complaint**

Plaintiffs' amended complaint makes the following allegations: Plaintiffs are female residents of the Anna Louise Inn.[1] (Doc. 3 at ¶ 3). They have resided at the Inn for periods ranging from 11 months to 34 years and consider the Inn to be their home. (*Id.*). A number of the residents work in the downtown area; a number are retired individuals; a number of residents are attending the University of Cincinnati and Cincinnati State; and all of the residents have some form of income. (*Id.*).

Defendant Western & Southern is an Ohio corporation with its corporate headquarters located at 400 Broadway, Cincinnati, Ohio. (*Id.* at ¶ 4). It conducts business in the areas of life

---

[1]The Court takes judicial notice that the Inn is located in Lytle Park in downtown Cincinnati, Ohio.

and health insurance, annuities, mutual funds, real estate development, and other investment products. (*Id.*). Western & Southern operates through 14 member companies. (*Id.*). The company owns and manages over $51 billion and its net worth is $5.6 billion. (*Id.*). Western & Southern has undertaken real estate activities in the southeast quadrant of downtown Cincinnati, including the development of "The Great American Tower at Queen City Square," a hotel, and other projects. (*Id.*).

Cincinnati Union Bethel (CUB) is a public benefit corporation organized under the laws of Ohio. (*Id.* at ¶ 5). CUB's mission and activities have evolved and expanded in the years since it began providing religious services in 1830 and social services thereafter, and it is currently a secular agency that continues to operate a variety of social service programs. (*Id.*).

CUB is the owner of the Anna Louise Inn. (*Id.*). The Inn is a residence for women that opened in Lytle Park in 1909. (*Id.* at ¶ 6).[2] The Inn's mission since its opening and continuing to the present has been to provide women with safe, decent and affordable housing, without regard to their economic condition, race, or lack of employment. (*Id.* at ¶ 7). Supportive services and educational programs have been offered to the female residents of the Inn since its founding. (*Id.* at ¶ 8). These have included mental health counseling dating back to the early 1980s; a homeless shelter for families which was started in 1994; and a program known as the "Off the Streets" program for prostituted women, which was started at the Inn in 2005. (*Id.*).

In 2010, CUB obtained an allocation of $13 million consisting of Housing Tax Credits, Historic Tax Credits, and a Home Loan for the purpose of renovating the Inn. (*Id.* at ¶ 9). The

---

[2]The Inn was constructed on property donated by Mr. and Mrs. Charles P. Taft and was named after their daughter, Anna Louise Taft-Semple. (*Id.*).

renovation will reduce the Inn's capacity from 260 to 110 residents, including 25 participants in the Off the Streets program. (*Id.* at ¶ 10). Construction for the renovation was scheduled to begin in the summer of 2011 and to be completed in the fall of 2012. (*Id.*).

Western & Southern and its agents have undertaken a campaign to drive the Anna Louise Inn and its female residents out of the Lytle Park neighborhood in order to force a sale of the property to Western & Southern. (*Id.* at ¶ 11). The sale would enable Western & Southern to redevelop the site for high-end condominiums, a use Western & Southern deems more compatible with offices and condominiums it presently owns in the area and wishes to develop. (*Id.*). Western & Southern has publicly argued that the female residents of the Inn are not compatible with the character of the area Western & Southern has been developing, that the Inn must be sold to the company, and that the female residents must be moved elsewhere. (*Id.*). The campaign to remove the female residents of the Inn has included vilifying them; photographing them without their permission; falsely accusing them of engaging in criminal activity and other "inappropriate behavior" in the neighborhood; encouraging business entities and community organizations to oppose the financing of the Inn on the grounds that the Inn is detrimental of the well-being and development of downtown Cincinnati; engaging in frivolous challenges to the Historic Review Board's approval of the renovation plans for the Inn; making a frivolous challenge to the building permit for the renovations; and threatening to block charitable contributions to community organizations that support the Inn in remaining at its present site. (*Id.* at ¶ 13). The president of Eagle Realty Group, one of the family of Western & Southern companies, has publicly demanded: "I just want them [the female residents of Anna Louise Inn] out of there." (*Id.*).

Plaintiffs have been intimidated and threatened by Western & Southern's campaign. (*Id.* at ¶ 15). Their enjoyment of residing at the Inn has been diminished by Western & Southern's campaign to remove them from the neighborhood on the premise they "are not good enough" for the neighborhood, and they have been demeaned by repeatedly being labeled as being "incompatible" with the Lytle Park neighborhood. (*Id.* at ¶¶ 16-17). Plaintiffs regard the Anna Louise Inn as their home and do not wish to be moved from it. (*Id.* at ¶ 18).

Plaintiffs bring four claims for relief: (1) defendant's conduct constitutes discrimination in the terms, conditions or privileges of the rental of a dwelling on the basis of sex or familial status in violation of 42 U.S.C. § 3604(b), and coercion, intimidation and threats against persons in the exercise or enjoyment of their rights under the FHA in violation of 42 U.S.C. § 3617[3] (Count I); (2) defendant's conduct constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, 42 U.S.C. §§ 3601-3619 (Count II); (3) defendant's conduct constitutes a violation of plaintiffs' rights under Ohio Rev. Code §§ 4112.02(H)(4) and (12) (Count III); and (4) defendant's conduct constitutes a violation of plaintiffs' right to privacy under Ohio law (Count IV). As relief, plaintiffs seek compensatory damages, punitive damages, and attorney fees.

## II. Defendant's Motion to Dismiss

Defendant Western & Southern moves to dismiss the complaint pursuant to Fed. R. Civ.

---

[3]Section 3617 provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

4

P. 12(b)(6). (Doc. 4). Defendant asserts that plaintiffs are attempting to misuse the FHA to prevent Western & Southern as an adjoining property owner "from exercising its right to lawfully challenge certain uses of the Anna Louise Inn that it believes to be improper under the City of Cincinnati Zoning Code." (Doc. 4 at 2). Western & Southern argues that the correctness of its position on the zoning laws must be determined in state court and that plaintiffs will not be directly affected by the resolution of that issue. (*Id.*). Western & Southern asserts that it "does not oppose the plaintiffs' continued residence and enjoyment of their housing at the Inn" but it does oppose the planned transformation of the Inn. (*Id.*).[4]

As to the merits of plaintiffs' claims, defendant asserts that plaintiffs have failed to establish a prima facie case of disparate treatment under either 42 U.S.C. § 3604(b) or § 3617. (*Id.* at 7-8, citing *Groach Assocs. #33, L.P. v. Louisville/Jefferson County Metro Human Relations Com'n*, 508 F.3d 366, 374 (6th Cir. 2007)). Defendant contends that (1) plaintiffs do not allege an actionable housing practice and have not proven an adverse effect by offering statistical evidence, and (2) Western & Southern has a legitimate business reason for opposing the building permit that currently authorizes the proposed renovations to the Inn.[5] (*Id.* at 8).

Defendant further argues that (1) plaintiffs cannot satisfy the requirements of a § 3604(a) or (b) claim because they have made no allegations showing that Western & Southern directly

---

[4]Defendant makes a number of additional factual allegations which the Court will not address because they are outside of the complaint and are not matters of public record. (*Id.* at 2-5). See *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (the district court is not permitted to consider matters beyond the complaint on a Rule 12(b)(6) motion to dismiss).

[5]The Court cannot accept the defendant's version of the facts or determine the sufficiency of the evidence at this stage of the litigation. See *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, __ F.3d __, No. 10-6117, 2012 WL 678166, at **4-5 (6th Cir. March 2, 2012).

affected the availability of the Anna Louise Inn to plaintiffs, and (2) plaintiffs cannot pursue a claim under § 3617 because defendant has never been in a position to directly disrupt plaintiffs' rights under the FHA. (*Id.* at 8-14, citing *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994); *Farmer v. City of Cincinnati*, No. 1:04-cv-080, 2006 WL 2814398, at *8 (S.D. Ohio Sept. 28, 2006) (Dlott, J.); *Sunrise Dev., Inc. v. Lower Makefield Twp.*, No. 2:05-cv-02724, 2006 WL 626806, at *5, n.12 (E.D. Pa. Jan. 23, 2006)). Defendant also asserts that plaintiffs' claims under the FHA are barred by the *Noerr-Pennington* doctrine, which purportedly allows defendant to petition appropriate governmental or administrative entities for revocation of the building permit authorizing renovations to the Anna Louise Inn without violating the FHA. Finally, defendant contends that if the Court determines plaintiffs' federal claims have no merit, then the Court should dismiss plaintiffs' state law claims for lack of supplemental jurisdiction.

In response to defendant's motion to dismiss, plaintiffs contend that defendant has misstated and misquoted the allegations of their complaint. (Doc. 5 at 2-3). Plaintiffs assert that the allegations of the amended complaint, accepted as true, state a cause of action under § 3617 based on a violation of their "right of occupancy" granted by § 3604(b). (*Id.* at 4-8). Plaintiffs further contend that the *Noerr-Pennington* doctrine does not protect communications made unlawful by § 3617. (*Id.* at 8).

### III. Rule 12(b)(6) standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the complaint need not contain "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), under Fed. R. Civ. P. 8(a)(2), "more than an unadorned, the-defendant-unlawfully-harmed-me

6

accusation" is required. *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 1949 (2009). As the Supreme Court explained in *Iqbal*: "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks, citations, and alterations omitted).

Pursuant to *Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In reviewing a complaint, the Court is guided by the following principles: First, the general rule that the court must accept as true all allegations in the complaint "is inapplicable to legal conclusions." *Id.* This means that conclusory recitals of the elements of a claim, including legal conclusions couched as factual allegations, "do not suffice." *Id.* at 1949-50 ("[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Plausibility is a context-specific inquiry, and the allegations in the complaint must "permit the court to infer more than the mere possibility of misconduct," namely, that the pleader has "show[n]" entitlement to relief. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original). The well-pleaded facts of the complaint need not, however, be persuasive to satisfy the *Iqbal* and *Twombly* standard. *Mediacom*, 2012 WL 678166, at *4.

### V. Plaintiffs have stated a claim for relief under the FHA (Counts I and II).

Defendant contends that the allegations of the amended complaint fail to state a claim for relief against it under 42 U.S.C. § 3604(b) (hereinafter also referred to as the "anti-discrimination provision") because those allegations do not support a finding that Western & Southern has ever been in a position to directly affect the availability of the Anna Louise Inn to plaintiffs as required under the statute.[6] (Doc. 4 at 8-9). Western & Southern asserts there is no allegation that it ever owned the Inn or denied availability of the Inn to any plaintiff. Western & Southern contends that it has no control over the sale or rental of property it does not own, so that it necessarily follows it cannot discriminate against plaintiffs with respect to their housing rights. Defendant also complains that plaintiffs read § 3604 too broadly by attempting to characterize the mere appeal of a zoning permit by Western & Southern as the deprivation of another's housing rights. Defendant argues it has taken no action that has deprived plaintiffs of their property rights and that plaintiffs have not in fact been deprived of any property rights.

Defendant contends that plaintiffs' claim under § 3617 (hereinafter also referred to as the "anti-interference provision") likewise must fail. (*Id.* at 12-14). Defendant argues that it has never been in a position to "directly disrupt" plaintiff's rights under the FHA, so that defendant does not fall within the scope of § 3617. (*Id.* at 12). Defendant further denies that it has acted with a discriminatory intent as is necessary to establish a § 3617 claim and alleges that it is

---

[6]Defendant also argues that plaintiffs' allegations do not satisfy 42 U.S.C. § 3604(a), which makes it unlawful: "To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." (Doc. 4 at 8-11). However, plaintiffs do not assert a claim under § 3604(a) in the amended complaint, and they make clear in their opposing memorandum that they are not asserting a violation of subsection (a). Accordingly, the Court need not address defendant's arguments in this regard.

8

instead motivated to appeal the building permit issued to the Anna Louise Inn by "purely economic considerations." (*Id.* at 14).

Plaintiffs make clear in their memorandum in opposition to defendant's motion to dismiss that they do not bring a stand-alone claim under the § 3604(b) anti-discrimination provision. Rather, plaintiffs seek relief under § 3617, which protects them against interference with their fair housing rights, premised on their right to occupy the Anna Louise Inn as their residence without being subjected to discriminatory practices made unlawful by § 3604(b). Plaintiffs argue that they have stated a cause of action under § 3617 by alleging that as female residents of the Inn, they are protected individuals under the FHA against whom Western & Southern has waged a campaign, which includes intimidating and threatening actions, designed to coerce plaintiffs to move out of their neighborhood premised on defendant's discriminatory belief that plaintiffs are not compatible with the neighborhood. Plaintiffs contend that the protection against discriminatory practices offered by § 3604(b) extends to discriminatory acts such as those undertaken by Western & Southern which occur following the sale or rental of a property, and these protections encompass practices that limit the "use of privileges, services or facilities associated with a dwelling because of race [or] religion [or sex]." (Doc. 5 at 8, citing *Bloch v. Frischholz*, 587 F.3d 771, 781 (7th Cir. 2009) (citing 24 C.F.R. § 100.65(b)(4)). Plaintiffs allege that the cases defendant relies on in support of its opposing arguments are inapposite because those cases do not involve a "right of occupancy" claim such as that asserted by plaintiffs. (*Id.* at 5).

To state a claim for interference with their housing rights under § 3617, plaintiffs must allege facts to show defendant falls within the scope of the statute, which applies to "actors who

9

are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus." *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 236 (6th Cir. 2003) (citing *Babin*, 18 F.3d at 347).

To support its argument that it is not in a position to directly disrupt or interfere with the exercise of plaintiffs' rights under the FHA because it has no control over the sale or rental of the Anna Louise Inn, defendant relies on the Sixth Circuit's opinion in *Babin*, 18 F.3d 337. In *Babin*, a homeowner negotiated a lease agreement with a state agency to rent her house to a group of mentally disabled adults. When officials for the group home advised neighborhood residents of their plans for the property, the neighbors began a campaign to stop the group home. After a delay in approval of the leasing, the homeowner received an offer from neighboring residents to purchase the house with funds solicited and raised by other neighbors. The property was ultimately purchased by the neighbors and plaintiffs brought suit against the original homeowner, neighbors, and others alleging discrimination under the Fair Housing Act.

In analyzing plaintiffs' § 3617 anti-interference claim under the Fair Housing Act, the *Babin* Court acknowledged the broad reach of the language "interfere with" as used in § 3617, stating that the language has been "broadly applied 'to reach all practices which have the effect of interfering with rights' under the fair housing laws." *Id.* at 347 (citations omitted). The Sixth Circuit determined that the scope of § 3617 interference is not limited to those who use "some sort of 'potent force or duress'" as found by the district court. Instead, the statute "extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus." *Id.* The Court found that under this standard, the language "'interfere with' [in § 3617] encompasses such overt acts as racially-

motivated firebombings, sending threatening notes, and less obvious, but equally illegal, practices such as exclusionary zoning, deflating appraisals because of discriminatory animus, and insurance redlining." *Id.* (internal citations omitted).

The Sixth Circuit determined that economic competition does not constitute the type of "interference" prohibited by the FHA under § 3617. *Id.* The Court found that the original homeowner was not liable under the FHA's anti-interference provision merely because she sold her house to the highest bidder. There was no evidence that the negotiations for the lease had given rise to a legally enforceable right in either party, and Congress did not intend to compel a seller to accept a less favorable offer absent such a right simply because a member of a protected class made that offer. Moreover, even if the homeowner's involvement was direct enough to bring her actions within the scope of the FHA's anti-interference provision, there was no FHA violation because the evidence showed her motivation was purely economic. Likewise, the neighbors' act of purchasing the house did not constitute "interference" within the meaning of the FHA direct enough to warrant a finding of liability because even though there was evidence of a discriminatory animus on the neighbors' part, they were not in a position to disrupt the plaintiffs' enjoyment of their rights other than by economic competition. *Id.* at 347-48.

Defendant Western and Southern argues that like the neighbors in *Babin*, its appeal of the building permit issued to the Anna Louise Inn was motivated purely by economic considerations and does not directly disrupt plaintiffs' rights under the FHA.

Defendant also relies on the Court's decision in *Farmer v. City of Cincinnati*, No. 1:04-cv-080, 2006 WL 2814398, at *8 (S.D. Ohio Sept. 28, 2006) (Dlott, J.) (*Farmer I*). The

11

plaintiffs in *Farmer I* were former residents of an affordable housing complex who sued Allen Temple-Tryed Stone Development, Ltd. (ATTSD), a non-profit group that had submitted a formal proposal to purchase the complex, bulldoze the apartment buildings, and construct a new development of condominiums and single-family homes on the site in furtherance of a plan adopted by the City of Cincinnati. The plaintiffs brought claims against ATTSD under § 3604(a) and (b) based on its failure to negotiate the sale or rental of the apartments to the individual plaintiffs and for race and gender discrimination in regards to the provision of housing and other services. Applying the Sixth Circuit's decision in *Babin*, the Court dismissed the complaint finding that ATTSD was not "in a position directly to deny a member of a protected group housing rights" so as to be liable under § 3604(a) or (b). *Id.* at *8. The Court determined that because ATTSD was not the legal owner of the property in question when the lawsuit was initiated, and because the apartment buildings had in any event been demolished, ATTSD could neither have violated § 3604(a) nor have discriminated against the individual plaintiffs under § 3604(b) in regards to the "'terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith' on the basis of their race or gender.'" *Id.*

Defendant Western & Southern contends that it likewise cannot be held liable under the FHA because similar to the defendant in *Farmer I*, Western and Southern is not alleged to have owned or denied the availability of the Inn to any of the plaintiffs.

However, defendant fails to acknowledge that the *Farmer* Court recognized in a subsequent opinion that because the FHA was intended "to reach a broad range of activities that have the effect of denying housing opportunities to a member of a protected class," fair housing

12

claims could be asserted against non-owners of a property where such persons "though not owners or agents, are in a position directly to deny a member of a protected group housing rights." *Farmer v. City of Cincinnati*, No. 1:04-cv-080, 2006 WL 3762131, at *8 (S.D. Ohio Dec. 21, 2006) (*Farmer II*) (quoting *Babin*, 18 F.3d at 344). Thus, the Court declined to dismiss a related fair housing claim alleging discriminatory practices under § 3604 against the City of Cincinnati who, although not the owner of the subject property, allegedly interfered with a purchaser's attempt to buy the property from the owner.

It is clear from the above cases that the determinations of whether a non-owner is in a position to directly influence or disrupt a plaintiff's protected housing rights and whether that individual or entity exercised its powers with a discriminatory animus are dependent on the particular facts alleged. *Farmer II*, 2006 WL 3762131; *Farmer I*, 2006 WL 2814398; *Babin*, 18 F.3d at 337. The case law also makes clear that the language of the FHA's anti-interference provision is to be read broadly to reach all practices that have the effect of interfering with a protected individual's rights under the fair housing laws.[7] Applying these principles to the particular facts of the present case, the Court finds that plaintiffs have alleged sufficient facts to satisfy the elements of a § 3617 claim and to withstand defendant's motion to dismiss plaintiffs' FHA claims.

Although Western & Southern characterizes this matter as a simple zoning dispute and an issue purely of state law, a review of the amended complaint shows that plaintiffs' allegations go

---

[7] Plaintiffs suggest that the correct standard for "interference with" an individual's rights under § 3617 is "whether a reasonable person in the plaintiff's position [would] be materially affected by the defendant's behavior." (Doc. 5 at 6, citing Robert G. Schwemm, Neighbor-on-Neighbor Harassment: Does the Fair Housing Act Make a Federal Case Out of It?, 61 Case W. Res. L. Rev. 865 (2011)). However, as plaintiffs have not cited any authority to show that the Sixth Circuit has adopted this standard, the Court will not apply it here.

13

beyond assertions that Western & Southern appealed zoning decisions affecting the planned renovation of the Anna Louise Inn. Rather, plaintiffs allege that Western & Southern pursued *frivolous* appeals of the Historic Review Board's approval of the renovation plans for the Inn and of the building permit for these renovations, and further that defendant committed a series of additional overt acts as part of a campaign to drive plaintiffs from their home and their neighborhood. (Doc. 3 at ¶¶ 11, 13). The specific actions defendant is alleged to have committed include photographing residents without their permission and falsely accusing the residents of engaging in criminal activity and other inappropriate behavior. (*Id.*). These actions could be construed as intimidating, harassing and threatening to the residents of the Inn, and according to the allegations of the amended complaint, plaintiffs have in fact been threatened, harassed and intimidated by Western & Southern's actions. (*Id.* at ¶¶ 13, 15). Thus, plaintiffs' allegations are sufficient to show that in contrast to the defendants in *Babin*, Western & Southern was "in a position directly to disrupt the exercise or enjoyment" of plaintiffs' protected rights under the FHA.[8] *See Babin*, 18 F.3d at 347.

In addition, plaintiffs allege facts that, if accepted as true, are sufficient to support a finding that Western & Southern has exercised its powers with a discriminatory animus. First, plaintiffs allege that representatives of Western & Southern have stated in public that the company wants the residents of the Inn, all of whom are female, removed from the neighborhood because they are not compatible with the character of the neighborhood. (Doc. 3 at ¶¶ 12, 14).

---

[8] The Court notes that *Babin* was appealed at the summary judgment stage so that the issue before the Court was whether there was sufficient evidence such that a jury could reasonably find for the plaintiff. *Babin*, 18 F.3d at 341. Because this matter is before the Court on a motion to dismiss, the question to be resolved is whether plaintiffs have stated a plausible claim for relief based on the allegations of the complaint, accepted as true. *See Mediacom*, 2012 WL 678166, at *4.

Second, plaintiffs allege that Western & Southern has pursued frivolous administrative appeals that, contrary to defendant's contentions, are not motivated purely by economic concerns. (*Id.* at ¶ 13). Third, as stated above, Western & Southern has allegedly engaged in activities directed at plaintiffs which go well beyond its administrative appeals and that could be construed as intimidating and harassing.[9] Taken together, plaintiffs' allegations regarding the public statements Western & Southern has made, the frivolous nature of Western & Southern's administrative appeals, and the series of overt actions Western & Southern has undertaken as part of a campaign to oust plaintiffs from their home and neighborhood, permit an inference that Western & Southern has acted with a discriminatory animus. Although Western & Southern disputes plaintiffs' allegations that it has been motivated by anything other than purely economic concerns, a determination as to defendant's true motives cannot be made at the pleading stage. *See Mediacom*, 2012 WL 678166, at *4.

For these reasons, plaintiffs have sufficiently pled the elements of a § 3617 claim. Plaintiffs have alleged facts from which the Court may plausibly infer that Western & Southern is in a position directly to disrupt plaintiffs' federally-protected rights to reside at the Inn and to quiet enjoyment of their home, and that Western & Southern has exercised its powers with a discriminatory animus. *See Babin*, 18 F.3d at 347. Plaintiffs' claims under the FHA therefore

---

[9]These allegations distinguish the present case from the cases Western & Southern relies on for the proposition that the mere appeal of a zoning permit, or any other activity motivated purely by economic considerations, cannot give rise to liability under § 3617. (*See* Doc. 4 at 12-14, citing *Babin*, 18 F.3d at 337; *Sunrise Dev., Inc. v. Lower Makefield Twp.*, No. 2:05-cv-02724, 2006 WL 626806, at *5, n.12 (E.D. Pa. Jan. 23, 2006) (as the plaintiffs did not allege any actions by the defendant that could be construed as coercive, intimidating, or threatening, the court limited its analysis to whether the defendant's appeal of a zoning decision interfered with the plaintiff's exercise or enjoyment of FHA rights).

withstand defendant's motion to dismiss.

### 3. The *Noerr-Pennington* doctrine does not bar plaintiffs' FHA claims.

Defendant contends that it was free to petition appropriate government or administrative entities to revoke the building permit authorizing the renovations to the Anna Louis Inn without incurring liability under the FHA based on the *Noerr-Pennington* doctrine. (Doc. 4 at 15). This doctrine holds that business interests may combine and lobby to influence the legislative, executive or judicial branches of government or administrative agencies without violating the antitrust laws because such activities are protected by the First Amendment right of petition. *See Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 298 (6th Cir. 1992) (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)). The doctrine has been expanded beyond the anti-trust context to protect the First Amendment right of petition from other claims brought under state and federal law. *See Eaton*, 975 F.2d at 298. Moreover, the Supreme Court has carved out a very narrow exception to the doctrine where the defendant has intended to use the petitioning process merely to harass the plaintiff. *Id.*

The *Noerr-Pennington* doctrine does not compel dismissal of plaintiffs' FHA claims. First, defendant cites no authority to show that the doctrine protects a party from liability for allegedly interfering with a plaintiff's rights under the FHA. Second, assuming the doctrine does protect against liability for an FHA claim, plaintiffs' allegations that defendant pursued frivolous administrative appeals raises a question as to whether the sham exception to application of the

16

doctrine applies. *See Eaton*, 975 F.2d at 298. Finally, plaintiffs allege not only that defendant petitioned government agencies but also that defendant engaged in other overt acts designed to harass and intimidate plaintiffs. The *Noerr-Pennington* doctrine provides no protection for such activities. Thus, the *Noerr-Pennington* doctrine does not apply to preclude plaintiffs from proceeding with their FHA claims in this action.

**4. The Court will exercise supplemental jurisdiction over the state law claims**.

Because the Court has determined not to dismiss plaintiffs' FHA claims, the exercise of supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 is appropriate. The Court therefore will not dismiss these claims.

**IT IS THEREFORE ORDERED THAT:**

Defendant's motion to dismiss (Doc. 4) is **DENIED**.

Date: 3/14/2012

Karen L. Litkovitz
United States Magistrate Judge